

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Sidney Latham
Secretary of State
Austin, Texas

Dear Sir:

Opinion No. 0-5271
Re: The Application for
Charter of "Parkview,
Inc." is in compliance
with the laws of Texas.

You have submitted to us the proposed charter of "Parkview, Inc." and request our opinion on the following questions:

"1. Is the purpose clause as contained in section 2 and subsections (a), (b), (c), (d) and (e) in compliance with subdivision 47 of Article 1302, R. C. S., 1925?

"2. Do the various subdivisions of the purpose clause of the charter constitute a limitation or an enlargement upon the statutory purpose clause as quoted in the charter?

"3. In the light of the various subdivisions contained in the purpose clause, is a dual or multiple purpose created in any respect?

"4. Can the Federal Housing Administration, as an agency of the Federal Government, own stock in domestic corporations under the laws of the State of Texas, or the authority of the Federal Housing Act or other Federal authority?

"5. If the Federal Housing Administration, as such, cannot own such stock, can it hold such stock through a trustee or the Federal Housing Commissioner or Administrator?

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Sidney Latham, Page 2

"6. Does the charter provide for an
unauthorized delegation of authority to the
owner of the Class A preferred stock in contra-
vention of Article 1327 or other provisions of
the Texas Statutes?

"7. Is there a burden on this Department
to examine into detailed by law material or con-
tractual rights that might be incorporated into
a proposed charter, and if so, what would be
the effect of the approval by this Department
of a charter containing detailed contractual pro-
visions that might ultimately be held illegal?

"8. Should the charter be approved and
filed by this Department as being in compliance
with the laws of Texas governing such matters?"

Your conclusions together with facts giving rise
to your inquiry as contained in your letter are:

"It is the view of this Department that
several of the charter provisions contravene
the spirit, if not the letter, of the statutes
of Texas governing such matters; and that much
of the material in the charter is the proper
subject matter for the bylaws and/or the deed
of trust or other contracts to be entered into
by the company.

"Section 2 of the charter states verbatim the
purpose as contained in subdivision 47 of Article
1302, R. C. S., 1925, but this purpose is further
elaborated in subsections (a), (b), (c), (d) and
(e). We construe the word 'rent' in subsection
(a) of section 2 of the charter and the word 'lease'
in subsection (b) as enlargements of the statutory
purpose as provided by subdivision 47 of Article
1302. We construe subsection (e) of section 2 of
the charter as being contrary to the statutory
purpose which authorizes such a corporation 'to
accumulate and lend money,' but the authority to

Honorable Sidney Latham, Page 3

borrow money might be proper under section 7
of Article 1320, R. C. S., 1925. We construe
the language 'any or all of the objects of its
business' as contained in subsection (c) of
section 2 of the charter and the language 'the
accomplishment of any one or more of the purposes'
as contained in subsection (e) of section 2 of
the charter, as indicating a dual purpose of the
corporation contrary to the statutes. The appli-
cant contends that all such subdivisions are mere
limitations upon the main statutory purpose clause.

"The total capital stock is 29,858 shares
of a par value of one dollar each, classified
as follows:

|  | No. of Shares | Value |
|---|---|---|
| Class A Preferred Stock | 100 | $ 100.00 |
| Class B Preferred Stock | 23,625 | $23,625.00 |
| Common Stock | 6,133 | $ 6,133.00 |

"It appears from the affidavit attached to
the charter that the one hundred shares of Class
A preferred stock has been subscribed and paid in
by Wiley Johnson as Trustee for the Federal Housing
Administration, and we are advised by Mr. Johnson
that this stock is to be transferred to the Federal
Housing Commissioner. Section 7, subdivisions
eight and eleven, together with other sections of
the charter, grant broad powers of control to the
owner of the Class A preferred stock in some in-
stances exceeding the powers of the directors."

The purpose clause as stated in the charter
application is :

"2. The purpose for which it is formed is
to erect or repair any building or improvements,
and to accumulate and lend money for said purposes,
and to purchase, sell and subdivide real property
in towns, cities and villages and their suburbs,

Honorable Sidney Latham, Page 4

not extending more than two miles beyond their limits, and to accumulate and lend money for that purpose.

"In order to carry out the purpose of the corporation, as hereinabove set out, it is the intention of the incorporators herein to proceed as follows:

"(a) To create a private corporation to provide housing for rent or sale, and to acquire any real estate or interest or rights therein or appurtenant thereto and any and all personal property in connection therewith.

"(b) To improve and operate, and to sell, convey, assign, mortgage or lease any real estate and any personal property.

"(c) To borrow money and issue evidence of indebtedness in furtherance of any or all of the objects of its business; to secure the same by mortgage, deed of trust, pledge or other lien.

"(d) To apply for and obtain or cause to be obtained from the Federal Housing Commissioner a contract or contracts of mortgage insurance pursuant to the provisions of the National Housing Act as amended, covering bonds, notes and other evidences of indebtedness issued by this corporation and any indenture of Mortgage or Deed of Trust securing the same. So long as any property of this corporation is encumbered by a mortgage or deed of trust insured by the Federal Housing Commissioner it shall engage in no business other than the construction and operation of a War Housing Project or Projects.

Honorable Sidney Latham, Page 5

"(e) To enter into, perform and carry
out contracts of any kind necessary to, or
in connection with, or incidental to, the
accomplishment of any one or more of the
purposes of the corporation."

Paragraph 2 of the charter (with the exception
of the subdivisions thereof) is taken verbatim for subdivision
47, Article 1302 V. A. C. S.

If subsections (a), (b), (c), (d) and (e) constitute
an enlargement upon the purpose contained in Paragraph 2 such
charter would be condemned as containing more than one purpose
under the authority of Ramsey v. Tod, 69 S. W. 135, and Borden
v. Prespalasios Rice & Irrigation Co. 82 S. W. 463.

A careful consideration of subdivisions (a), (b),
(c), (d) and (e) leads us to the conclusion that they are, with
one exception hereinafter noted, but explanatory of the author-
ized purpose. Clearly the corporation could do any and all
things mentioned in such subdivisions if they were not contained
in the charter and hence such enumerated rights do not constitute
an enlargement of the rights and powers of the corporation af-
forded by Subdivision 47 of Article 1302, supra.

The last sentence of subdivision (d), reading:

"So long as any property of this corporation is
encumbered by a mortgage or deed of trust insured
by the Federal Housing Commissioner it shall en-
gage in no business other than the construction
and operation of a War Housing Project or Projects."

is a limitation upon the general power contained in Paragraph
2 of the charter. Except for such limitation the corporation
could engage in all the business authorized and permitted by
the main purpose clause. It is fundamental that a corporation
may limit its powers to less than those afforded by the statute
under which they seek to incorporate.

We accordingly answer your questions 1, 2 and 3 by
giving our approval to the purpose clause as written.

Honorable Sidney Latham, Page 6

You state that the corporation sought to be formed is to have a Capital Stock of $29,858.00 and is to be further financed by loans of $600,000.00 from banks which loans are to be insured by the Federal Housing Administration.

Your questions 4 and 5 deal with the power of the Federal Housing Administration to own stock in corporations or specifically whether or not such authority can own one hundred (100) shares of Class A Preferred Stock in the proposed Texas corporation. We believe that the determination of such question, insofar as it involves a construction of the Federal Housing Act (Ch. 13, Title 12, U. S. C. A. Sections 1701-1732 inclusive), is a matter for the Federal authorities to pass upon, and we will assume, for the purpose of this opinion, that such question has been answered in the affirmative. The only question with which we will concern ourselves is whether or not under the Texas Statutes the National Housing Administration or the Administrator may own stock in a Texas corporation.

Our statutes do not establish the qualifications of stockholders. The right and capacity of any person to subscribe for stock in a Texas corporation is governed by the general rules of the Law of Contracts, 10 Tex. Jur. 699, Austin v. Strong 1 S. W. (2d) 872, 3 S. W. (2d) 425. In answer to your questions 4 and 5, insofar as the Texas Statutes are concerned, the Federal Housing Administration or the Administrator may own stock in Texas corporations. Having so answered, it follows that it can be purchased in the name of a Trustee. Of course, the relationship of the Trustee with the principal would be governed by the rules of Agency, 10 Tex. Jur. 699.

We have carefully examined the provisions of paragraph 7 of the charter, too lengthy to here set out, and although many of the provisions are such as are usually controlled by the bylaws, we find no statutory prohibition against incorporating them in the charter. We do not believe they could be held to violate Article 1327, R. A. C. S. reading:

"The directors shall have the general management of the affairs of the corporation, and may dispose of the residue of the capital stock at any time remaining unsubscribed, in such manner as the by-laws may prescribe."

Under such provisions the directors are vested with the general management of the corporation within clearly defined bounds.

Honorable Sidney Latham, Page 7

There is no unsubscribed Capital Stock in the instant case. We accordingly answer your 6th question in the negative.

In answer to your 7th question, we believe it to be your duty to examine into all provisions contained in a charter application to determine whether or not any provisions therein are repugnant to the laws of the State. If some provision should be hereafter held illegal the charter would not necessarily be void, but only that portion held illegal would have no force. Staacke v. Rutledge, 175 S. W. 444.

We believe the charter application should be approved and filed.

We respectfully return the application for charter.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By  *Lloyd Armstrong*
　　　Lloyd Armstrong
　　　Assistant

LA:fo

APPROVED MAY 11, 1943

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS